UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DEAN COMBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:16-cv-00282-WTL-MJD |
| ) | |
| BUTTS Warden, Mr., ) | |
| ) | |
| Defendant. ) | |

**Entry Granting Motion for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff Dean Combs, who at all relevant times was incarcerated at New Castle Correctional Facility ("New Castle"), brought this action against defendant Keith Butts, the Superintendent of New Castle. Mr. Combs alleges that Superintendent Butts violated his Eighth Amendment rights by failing to protect Mr. Combs from being sexually assaulted by his cellmate. Superintendent Butts moves for summary judgment on the ground that Mr. Combs failed to exhaust his administrative remedies before bringing this suit. The parties have each submitted multiple briefs in support of their respective positions. For the reasons explained in this Entry, Superintendent Butts's motion for summary judgment, [Dkt. 27], is **granted**.

## I.
## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to

the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement "is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

## II.
## Background

The Court begins by discussing the administrative remedy process in effect at New Castle during the relevant time. It then will summarize the evidence presented by Superintendent Butts and Mr. Combs in turn.

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("OGP") through which inmates, including those at New Castle, can grieve issues related to their conditions of confinement, such as the claims at issue here. The OGP in effect at all times relevant to this action consisted of three stages: the informal grievance stage, the filing of a formal grievance, and the filing of a grievance appeal. The OGP is complete, and all administrative remedies are fully exhausted, once the inmate has received a response to his grievance appeal.

Superintendent Butts submits the majority of his evidence via the affidavit of Jennifer Smith. Ms. Smith was at all times relevant to this action the Grievance Specialist at New Castle, and as such, she was responsible for entering offender grievances and responses thereto into IDOC's grievance tracking system and is the custodian of grievance records at New Castle. Ms. Smith reviewed the grievance records for Mr. Combs while he was incarcerated at New Castle from January 2016 through April 2016. The grievance records reveal that Mr. Combs filed three informal grievances on April 19, 2016, but they related to improper medical treatment and the inappropriate demeanor of a correctional officer; they did not relate to the claims at issue in this case. Moreover, the grievance records reveal that Mr. Combs has not filed a formal grievance since 2007.

Mr. Combs submitted multiple statements in response to Superintendent Butts's motion, as well as various documents.[1] The following summary of his submissions reveals the ever-

---

[1] The Court notes that only one of Mr. Combs's submissions, *see* dkt. 37 at 11, is sworn under penalty of perjury and thus constitutes admissible evidence in this case. Although this is an alternative basis to grant Superintendent Butts's motion for summary judgment (because that submission fails to create a fact issue), the Court will discuss all of Mr. Combs's submissions as if they constitute admissible evidence to explain why, even if all of his statements were sworn, Superintendent Butts would still be entitled to summary judgment.

changing and internally inconsistent nature of his evidence and positions with respect to exhaustion.

Mr. Combs filed the Complaint in this action on July 6, 2016. In his Complaint, he stated that he filed three grievances but received "no response." Dkt. 2 at 2. The Complaint was screened and Superintendent Butts asserted the affirmative defense of exhaustion. The Court issued a scheduling order staying all matters in the case unrelated to exhaustion and ordered Superintendent Butts to file a motion for summary judgment on exhaustion, request a *Pavey* hearing, or withdraw his defense. Before Superintendent Butts chose any of these options, Mr. Combs submitted two filings regarding exhaustion, and the Court stated that it would consider these filings and the evidence attached thereto in ruling on any motion for summary judgment Superintendent Butts filed. Superintendent Butts then filed the instant motion for summary judgment.

Mr. Combs filed a short response asking the Court to consider his previously submitted filings, and the Court agreed to do so. Mr. Combs's submission discusses several matters unrelated to the question of exhaustion, including a discussion of the underlying merits of his claims. But he also discusses exhaustion. He makes several generalized statements regarding difficulties with exhaustion that do not include specific factual assertions. For example: "The Administration is incorrect and untruthful to the point to stop grievances all types of ways," dkt. 23 at 6; "The Administration loses [sic] grievance letter[s] and [does] not sen[d] them back. I wrote 20 or more letters about my complaints," dkt. 23 at 7; "I sent grievance letters to about ever[y]one in that prison after 3 days that I was there," dkt. 23 at 10.

Mr. Combs also attached a grievance to his submission in which he complains about Superintendent Butts's failure to protect him from assault—that is, the facts underlying his claim in this action. *See* dkt. 23-1 at 1. In the grievance, he also asserts that he wrote "10 letters" and

"10 or 12 grievances" about the issue, and some of them "came back," some of them were lost or "thrown away," and some he lost when he was transferred.

This purported grievance is problematic from an evidentiary perspective for several reasons. First, Mr. Combs does not explain when it was filed and whether it was responded to. Second, it appears from the grievance that it was filed after Mr. Combs initiated this action. He references three times that the issue described is "*now*" a "$100,000 lawsuit," which is the relief he seeks in his complaint. Dkt. 23-1 at 1 (emphasis added). Third, New Castle Grievance Specialist Ms. Smith submitted a supplemental affidavit in which she attests that the document was likely created by Mr. Combs for this litigation rather than an authentic grievance because the grievance number is not valid (grievances numbers do not begin with "000"), it does not contain her handwriting or signature (instead a "Lt. Gard" appeared to sign it), and the date is handwritten rather than date stamped as she does for properly filed grievances. Because of these factors and Mr. Combs's lack of assertion to the contrary, this grievance is not evidence that Mr. Combs attempted to timely grieve his claims *before* filing suit. As discussed below, Mr. Combs's submission of this grievance also reveals his confusion regarding the exhaustion process.

In his final substantive submission regarding exhaustion, Mr. Combs stated that he had "newly discovered evidence." This evidence, however, amounts to (1) two grievances Mr. Combs filed from Wabash Valley Correctional Facility (where he was transferred to from New Castle in late April 2016) after he filed this action and regarding issues unrelated to this case; and (2) two lists of prison staff members whom inmates should contact depending on the problem they wish to have addressed. Mr. Combs explains that these exhibits are "about the grievances [he] file[d]" and asks the Court to "please believe that [he] like[s] to write and did file grievance and letters to Mr. Butt[s] and [the] grievance office and did all three step[s]." Dkt. 37 at 3.

Other than the foregoing evidence, Mr. Combs provides several more general assertions regarding the exhaustion process. For example, he asserts that he was "refused [a] . . . grievance from staff like when I ask for grievance th[e]y said you got to have a real problem if[] you want a grievance." Dkt. 37 at 2. However, in that same paragraph he states that he obtained a grievance from an inmate and "sent it in the mail," but "[i]t was sent back" with a notation that he would not be given "$100,000 dollars for your relief." Dkt. 37 at 2. He later asserts, again generally, that "when you have a grievance in the [IDOC] . . . they stop your grievance by not giving you one." Dkt. 37 at 2. Finally, in his most specific factual assertion, Mr. Combs states that some officers will deliver your grievance that you place in the mail bag and others will not, yet when he filed his "grievance to Ms. Smith she didn't get my grievance." Dkt. 37 at 5-6.

### III.
### Discussion

Superintendent Butts maintains that the undisputed evidence shows that Mr. Combs did not complete the three-stage process necessary to exhaust and thus his claim is barred under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, which requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit in court.

The parties' arguments and evidence set forth above raise two questions regarding exhaustion: whether the administrative remedies process was available to Mr. Combs, and if so, whether he exhausted his administrative remedies. Turning first to the question of availability, "the [PLRA] requires exhaustion only of remedies that are 'available.'" *King*, 781 F.3d at 893. "Prison officials may not take unfair advantage of the exhaustion requirement," and if they do, their conduct can make the remedy process "unavailable." *Dole*, 438 F.3d at 809. "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents

prisoners from pursuing administrative remedies." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016).

As set forth above, Mr. Combs undoubtedly attempts to assert that the administrative remedy process was unavailable because he either had difficulty obtaining a grievance form or his grievances were being destroyed. The problem for the Court accepting these assertions as sufficient to create a factual dispute is two-fold. First, many of Mr. Combs's assertions about his inability to obtain a grievance form or accusations that prison staff otherwise thwart his attempts to grieve are too general to create a factual dispute about the specific material facts in this case. For example, his assertions that "[t]he Administration losses [sic] grievance letter[s] and [does] not sen[d] them back," dkt. 23 at 7, or that "when you have a grievance in the [IDOC] . . . they stop your grievance by not giving you one," dkt. 37 at 2, are generalized complaints about the grievance process in IDOC facilities. They are not specific factual allegations that his attempts to grieve the claims raised *in this action* were thwarted by those means.

Second, and more importantly, his alleged inability to access grievance forms is contradicted by his own statements and his other evidence. When he filed this action on July 6, 2016, Mr. Combs stated that he had filed three grievances but did not receive a response. *See* dkt. 2 at 2. But once Superintendent Butts raised the affirmative defense of exhaustion, Mr. Combs's story changed. Then he said he "sent grievance letters to about ever[y]one in that prison after 3 days that I was there," dkt. 23 at 10, and he provided the Court with a grievance (which was written after this action began) stating that he wrote "10 letters" and "10 or 12 grievances" about the issue, and some of them "came back," some of them were lost or "thrown away," and some he lost when he was transferred, dkt. 23-1 at 1. And finally, in his next submission, he contends at length that his attempts to obtain grievance forms were thwarted or his grievances were destroyed, yet he

explains that he obtained a grievance, submitted it, and "[i]t was sent back" with a notation that he would not be given "$100,000 dollars for your relief." Dkt. 37 at 2.

The Court may refuse to consider affidavits—often called "sham affidavits"—when they "contradict[] the affiant's previous testimony . . . unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse." *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015); *see United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016) ("Changes in testimony normally affect the witness's credibility rather than the admissibility of the testimony, and thus the sham-affidavit rule applies only when a change in testimony is incredible and unexplained, not when the change is plausible and the party offers a suitable explanation such as confusion, mistake, or lapse in memory." (citations and quotations marks omitted)). Mr. Combs initially informed the Court in his Complaint that he filed three grievances but they were not returned. But once exhaustion was at issue, he stated he had actually filed 10 to 12 grievances, that he could not obtain a grievance form, that his grievances were destroyed, and finally, that he "did all three step[s]." Dkt. 37 at 3. All of these statements cannot be true. The grievance process cannot be both unavailable and completed; he cannot both have been denied grievances forms, which prevented him from grieving this issue, and filed a dozen grievances on the issues, some of which he states were returned to him. These subsequent assertions—all of which deviate from Mr. Combs's initial statement that he filed three grievances that were not returned—are both "incredible and unexplained," and thus will not be considered by the Court. *Funds in the Amount of $271,080*, 816 F.3d at 907. Mr. Combs offers no explanation for his ever-changing story, nor is an innocent explanation for these contradictions apparent to the Court.

The Court, however, does not suggest that Mr. Combs intentionally made misrepresentations to the Court (although this cannot be ruled out). Instead, confusion about the

grievance process (not "confusion" about the underlying facts as the word is used in *Cook*) appears to animate the evolving and inconsistent nature of his position in this case. *See, e.g.*, dkt. 37 at 3 (Mr. Combs citing to unrelated grievances as evidence that he exhausted his claims in this case). It appears that Mr. Combs believes he can exhaust his claims by writing "letters to about ever[y]one in that prison," dkt. 23 at 10, rather than complying with the specific three-step grievance process. But the Seventh Circuit has made clear that the "exhaustion requirement is strict. A prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King*, 781 F.3d at 893.

Mr. Combs also appears to believe that he can exhaust his claims *after* this action was filed. After all, he provided the Court with a grievance form in which he complains about the issues in this case as evidence of exhaustion, yet, as discussed above, that grievance was clearly written after this action was filed. Furthermore, Mr. Combs submitted what he described as "newly discovered evidence" of exhaustion, but this new evidence amounted to two grievances filed after he was transferred to Wabash Valley and related to medical issues rather than the issues in this case. But the PLRA is clear "that exhaustion must precede litigation." *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *see* 42 U.S.C. § 1997e (a) ("No action shall be brought with respect to prison conditions. . . until such administrative remedies as are available are exhausted.").

In sum, Mr. Combs's evidence regarding unavailability is in many instances too vague to create a specific factual dispute necessitating a hearing, or, more importantly, is contradictory and internally inconsistent such that it will not be considered by the Court. Although the Court cannot rule out intentional misrepresentations on Mr. Combs's part, it is far more likely that confusion drove his inconsistent statements, so the Court will pursue the matter no further.

Given this, Superintendent Butts's evidence that the remedy process was available remains undisputed. The Court therefore turns to whether Mr. Combs exhausted his administrative remedies. Superintendent Butts's other evidence shows that Mr. Combs did not file *any* informal grievances regarding the claim brought in this case, let alone formal grievances or grievance appeals. During the relevant timeframe, Mr. Combs filed three informal grievances, but they were related to medical issues, not the claims in this case.

Notably, Superintendent Butts's evidence that Mr. Combs filed only three grievances during the relevant time period aligns with Mr. Combs's statement in his complaint that he had filed three grievances. But even if Mr. Combs's statement is construed as an assertion that he filed three grievances relating to the claims in this case, the fact that he asserts they were not returned does not excuse his failure to complete the other two steps of the grievance process. As Superintendent Butts correctly points out, the OGP requires a formal grievance to be submitted even if an inmate has not received an official rejection of an informal grievance. *See* dkt. 29-1 at 16. Therefore, accepting Mr. Combs's statement as true that his grievances were not returned to him, it remained his obligation to submit a formal grievance. Critically, at no time does Mr. Combs specifically state that he filed a formal grievance or grievance appeal. Accordingly, Mr. Combs failed to exhaust the administrative remedy process that was available to him.

## IV.
## Conclusion

For the reasons explained above, Superintendent Butts's motion for summary judgment, [Dkt. 27], is **granted**. Mr. Combs's claim is **dismissed without prejudice**. Final Judgment shall issue.

**IT IS SO ORDERED.**

Date: 7/24/2017

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

DEAN COMBS
882800
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com